18-001-Y, people of the state of Illinois, athlete by Rick Leonard, first-class captain by William Breedlove. Mr. Breedlove. Good afternoon, Your Honor. I will be arguing from counsel table. Fire when ready. Court, are you ready? There's no doubt, Your Honors, that the facts of the case at bar are tragic. There was a motor vehicle accident and somebody was killed. And that is tragic for the victim, for victim's friends and the victim's family. And that goes without saying. But denial of justice and due process for the defendant takes that tragedy and expands it to all the citizens of the state of Illinois. And so I want to begin with the indictment of Mr. Petty. Mr. Petty was found at C-14. He was indicted in violation of Chapter 625, Section 511-501-A-6. What he was found guilty of at C-250 was not what he was charged with. He was found guilty of 625 ILCS 511-501-A-4. Those are two separate sections of the criminal statutes. And then when we get to the court's written opinion on the motion to reconsider, which begins at C-267 or A-15, if you're referencing the appendix, when we get to Section 269, the final paragraph, the court's findings track the language of A-4. And again, the indictment is not under A-4. A-4 makes it illegal to drive under the influence of any drug or a combination of drugs to a degree that renders the person incapable of safely driving. A-6 says it's, so A-4 requires some finding that there was causality between the substance, the drug, the intoxicant that caused the person to be unable to drive safely. Section A-6 states that it's illegal, regardless of your ability to drive, to have any amount of a drug, substance, or compound in the breath, blood, or other bodily substance or urine that results from the unlawful use or consumption of controlled substances, and in this case, Methamphetamine Control and Community Protection Act. So as we sit here today, years since the trial, and years since the event, and years since the indictment was initially filed, he has never been found guilty of what he was actually charged with. So the evidence in the court's discussion on the sufficiency of the evidence at the trial level never references the section under which he was charged. It never references whether or not he had in his breath, blood, or other bodily substance or urine anything resulting from unlawful consumption of methamphetamines. There is a stipulation in this fact-tendered stipulation that, and those are at C-236, Your Honors, excuse me, they begin at C-234, but I'm referring to the ones at C-236, five sub-paragraphs A and B, that there was a urinalysis, and in that urine of the defendant was amphetamine and benzodiazepines. However, there is no fact in the record that either of those substances result from the unlawful consumption of a controlled substance. The trial court makes a broad leap in stating, or not stating, in making the assumption that based on these facts, which were tendered in stipulation, that therefore he had methamphetamine, as a result of the unlawful use of methamphetamine. There is simply nothing in the record that shows, not even in the facts and stipulation, that shows where those two substances came from, how they came to be in his body, whether they were the result of unlawful consumption, whether they were even the result of methamphetamine use. It could have been the result of a prescription drug. It could have been the result of an ADHD medication. It could have been the result of many things. But it's not for this court to try and guess what it was the result of. It was for the state, for the people of Stark County, to prove, or to get the defendant to agree in stipulation, that those came as a result of what was charged under Section A-6. And again, they could have done that. They chose not to. A bench trial with stipulations does not mean that that has to be the only evidence. They could have presented additional evidence. They could have agreed to stipulate to certain evidence, for evidentiary reasons, and then put on more evidence. But they chose not to. And for those reasons, they never put on enough evidence to find that he was guilty of what was charged, nor guilty of what he was convicted of, which I remind the court were two separate things. Briefly, on the constitutionality of Section A-6, the statute is overbroad in that it says, any amount of a substance or compound resulting from the unlawful use or consumption of a controlled substance. Our memories are made up of a series of neurons and chemicals, endorphins, serotonin, whatever else it is. But if our brain remembers something, that is a chemical change in our brain, in our body, in a bodily substance that has occurred from some event. So if I can remember my time in law school at University of Illinois with my friends, and I had a beer at a tailgate, and I remember that event, there is a change in my bodily substance, in my brain, in my brain chemistry, that is the result of a consumption of alcohol at a tailgate at the University of Illinois over a decade ago when I was in law school. The same can be applied to methamphetamine. Did you have expert testimony about all that? There was no testimony about that issue, Your Honor. So this is you on chemical body changes? What do we make of that argument?  But at the end of the day, and this is a philosophical issue that is as old as humans, but our memories have to be somewhere. If they are in our brains, this Court believes that our memories are in our brain, then anything that creates a memory is necessarily a change or an effect within our body. If you believe in philosophical dualism, that's a whole separate story, and that's fine. But if this Court takes that our brain and our memories exist within our body, within our brain, then every event that's occurring right now is causing changes in our brain to remember what's happening right now. And so for that reason, I think the statute is overbroad in that if somebody took methamphetamines, if they remember that, they remember that event. Under subsection A6, there is a change in their substance that occurred as a result of that, and they are forever barred from driving the state of Illinois under that statute. I recognize that's a broad reading, but I think it's valid, Your Honor, because the statute could have been written much more narrowly, and the state has done that in other areas. The state doesn't say, you know, we have blood alcohol concentrations and other things we can deal with. And there are several, there is a grappling among legislatures and courts as to how to determine whether somebody is under the influence of certain things. With alcohol, we've developed some pretty reliable methods with blood alcohol testing and other methods. With other drugs, especially, there was an appeal earlier today regarding K2 and other cannabinoid substances, it becomes very difficult. But just because the science of determining whether or not somebody is impaired hasn't caught up with the drugs that people can take, doesn't mean that their constitutional rights to be proven guilty should take, should be lessened because we haven't come up with more concrete and scientific ways to determine whether or not somebody was under the influence. And so for that reason, Your Honor, I think that statute is unconstitutionally overbroad because it encompasses the entirety of somebody's life if they've taken a substance. On the suppression issues, Your Honor, there is, we cite to Missouri versus McNeely. And in that case, the United States Supreme Court suggests there's a big difference between a breathalyzer and taking somebody's blood. And here, and that taking somebody's blood must be done with a warrant because it's invasive of the body. Here, if it is invasive to take somebody's blood, which can be done with a simple finger prick, I would posit to this court that taking somebody's urine, which is a, for Mr. Scott Petty, would have been a far more invasive process than a finger prick. I believe that that must necessarily require a warrant as well. Well, let me ask you, is that the way they draw blood for blood alcohol or drug analysis with a single finger prick or do they draw it out with a needle? I don't know how they would, I mean, it now under McNeely requires a warrant, so I would assume the warrant would state specifically the process. Even if, Your Honor, it is drawing blood from the elbow or the arm in that fashion, then I would still suggest that that process is still less invasive than using a catheter to extract urine from somebody's blood. And because of that, I think we need to have a warrant. Before we can do that, there were no exigent circumstances. He was in the hospital. He wasn't going anywhere. It was, I believe, between seven and nine o'clock in the evening, something like that. And McNeely suggests that courts, states' attorneys, their legislature, their police department, need to work together to come up with modern remedies to needing to get warrants. There is nothing that would have prevented that police officer from calling the Stark County State's attorney to arrange for a warrant. Counsel, you have two minutes. Thank you. And so where it's possible, the police need to ask this branch of the government for permission and not forgiveness. On the stipulations themselves, and on the lack of the argument that there really was never a trial, many of the stipulations simply state that people could have testified to things or might testify to things, but aren't necessarily facts. So if this court finds there was a trial, I don't think those facts are sufficient to sustain a conviction, because there's no evidence We only have eight paragraphs with a few subparagraphs of facts, alleged facts, but many of them aren't facts. Many of them are suggestions of what could or couldn't have happened. And because of that, I don't think the facts are sufficient to support a conviction, and I don't think Mr. Petty ever had a trial. In fact, the court says at page 16 of the record, the trial court indicates that if we go forward with this, you would be stipulating to the facts that the state says that they can prove in this case, and there would be no trial. Mr. Petty had a right to a trial. His counsel, the state's attorney, and the judge continuously treated it as something else. They called it at one point a stipulated trial with a plea with a cap. Cannot have that. That does not exist. You either have a trial or you have a plea. And the fact that the trial court treated this essentially as a plea while paying lip service to calling it a trial does not meet the that Stark County has before they incarcerate somebody. Lastly, on the ineffective assistance of counsel issues, I don't believe those were clearly investigated by the underlying court at all. If the trial did occur, then the stipulations are that the defendant could present testimony from Ronald Henson regarding the weight to be given to the test results, and I'm quoting that stipulation number 8, Common Law Record 236. But there was none of that actual testimony. So if his counsel is stipulating that there could have been testimony, but then not putting it on, I find that to be ineffective. Perhaps he could have, if the stipulation was such as it was, the state could have closed their evidence and the defense could have moved for a directed verdict, and if it hadn't been received, the defense would have been free to put on their own evidence. But they never did. Nor, frankly, do I think he was ever given the opportunity, if you read the record of beginning at R1, which is the alleged stipulated bench trial on October 13th of 2017. Lastly, in regards to the, and I know I'm short on time, but with regards to the court saying at page 272 of the Common Law Record that there was no need to do a mental health or fitness examination of the defendant because two judges have been involved in the case and they never had any concerns, that I would posit that the court is simply inaccurate. The court at page 8 of the record says, I'm not going to go forward with this if he doesn't understand the consequences of what he's doing here. I don't think I can go forward with this. Then they break, and the defense counsel goes and talks to his defendant and coaches him on how to make sure he sounds competent, presumably. That's not in the record. Then we go again a few pages later, which is going to be less than a minute or two later in the same trial. The court again says on page 10 of the record, I cannot go forward with this unless you're sure of what you're doing today. Thank you. If I may briefly finish, Your Honors. Just finish your thought. You'll have some rebuttal time. That's fine. My thought on that, Your Honor, is that the stipulated bench trial, regardless of what it was, was replete with concerns and continuances and recesses, all based on the inability of the defendant to understand what was going on, and to fail either the trial court or the defense counsel to ask for an examination of fitness was both ineffective assistance of counsel and error by the trial court. Thank you, Your Honor. Mr. Lennox. May it please the court counsel, while I'm caught a little off guard here because the issue regarding the indictment was never raised in the trial court or in the briefs. So I ask that you find that that issue is forfeited. The defendant here was charged under 625 ILCS 5 slash 11-501 open parenthesis CA 6. That states that you're driving under the influence with any amount of methamphetamine in your urine, breath, blood, or other bodily substance. And that's what the defendant was charged with. And that's what he went to trial as a stipulated bench trial in this case. The stipulated bench trial was just in fact that you only have a stipulated bench trial tantamount to a guilty plea if the defendant either stipulates to evidence presented was sufficient to convict or the defendant does not present or preserve a defense. Here, neither one of those are present. If you look at the whole record rather than taking bits and pieces as defense counsel states, it's clear that the defendant nor his counsel stipulated that the evidence was sufficient to convict. The defendant's attorney reminded the trial court numerous times at the stipulated bench trial that the defendant was stipulating that the people would present those facts at trial contained in the stipulation and that the defendant was not stipulating that the people could prove those facts at trial. And in this case, the defendant preserved a defense. He went through a stipulated bench trial so he could preserve his motion to suppress evidence. So there may have been some confusion at points, but those confusion was always rectified by either the defendant's attorney or the prosecutor stating that the defendant was stipulating that the people could prove those facts, not that he was stipulating to the sufficiency of the evidence. With regard to the argument that the statute is unconstitutional because it's overbroad, defense counsel makes a unique argument, but I don't think the legislature can legislate to somebody's brain chemistry. The statute is not overbroad. It's a strict liability statute. You have to find that the defendant was driving with any amount of methamphetamine in his system, and the Supreme Court stated in People v. Moore, I believe, People v. Martin, that driving was the proximate cause. So you don't have to prove proximate cause, all you have to prove that the defendant had some amount of methamphetamine in that he was driving. What's the evidence in the record, Mr. Leonard, that he had methamphetamine? Yes. In the stipulated bench trial, they stipulated that he had methamphetamine and benzodiazepine in his blood. There was no mention that it was methamphetamine, but the statute is more that it's legal to have a salt, optical isomer, salt or optical isomer or analog of methamphetamine in your blood or urine. What was the evidence of that? The people had to prove this factual determination beyond a reasonable doubt. And what was the evidence for it? Well, the evidence is that methamphetamine is an amphetamine. Certainly, this would be a reasonable inference to believe that the amphetamine found in the defendant's blood was one of these analogs of amphetamine. How does that follow? Was there some scientific evidence to that? There was no scientific evidence of that. Isn't there another section of the statute that says that if it's mentioned in another section, it doesn't cover under that one? I'm not sure, but I would have to check and see if there's a section that says that the methamphetamine section is rather long and it refers to other sections as you noted, but the people only had to prove beyond a reasonable doubt, a possible doubt, and in this case, I believe it's a reasonable assumption for the trial judge to find that the amphetamine was an analog from the methamphetamine, if this court... Based on what? Based on the fact that both have amphetamine in the name of their substance. I'm sorry. There's a word rock, there's a word rocking horse. Does that mean that there's a rock in a rocking horse? No, it doesn't, but I believe it's science that methamphetamine is an amphetamine. The fact that there was no substance methamphetamine found in the defendant's blood is because it was probably broken down into these other elements. Probably? Probably. Is that beyond a reasonable doubt? I believe considering that and the fact that the officer also found methamphetamine in the vehicle along with a leafy substance, taking all those facts together, I believe you can make a reasonable inference that the amphetamine found in the methamphetamine was regarding the defendant's diazepine. I'm not so sure, but I believe it's a reasonable inference that the trial judge found, based on all these facts, that the defendant was under the influence of methamphetamine. I heard you asking us to dig quite deep and mention these various inferences without any knowledge. I mean, is there in fact an inference? There are no facts to show or no scientific testimony to show that these facts were, that the methamphetamine was broken down into amphetamine and benzodiazepine, just based on the fact that they're both amphetamines. I would argue that that was a reasonable inference. Of course, if this court believes otherwise, then my argument is a losing argument today. Does that answer your question? I thought you were answering, Judge. Either, either, both. Yeah, that answers it. Yeah, okay. Okay. So the defendant, I don't believe, makes an argument that the statute is overbroad. I think the statute's clearly defined. The defendant does not offer any reasonable science to back up the claim that just because you consume a beer or two in the past, that that completely affects your driving in the future. I'm sure everybody who drinks alcohol, as long as they're not affected by the alcohol at the time of the driving, it's perfectly legal. What makes it illegal is having that substance in your blood and driving at the same time. It's nearly tailored to meet that subject and to open up this Pandora's box of having scientific hypothesis that your brain chemistry has changed forever, and that makes it illegal if you drink beer in the past and then, or any other substance, and then you're not able to drive in the future. What is important is at the time that you're driving, whether you're under the influence of that drug, not whether your brain chemistry has changed. I think I've covered all of the defendant's arguments. I fully briefed all of the arguments in my brief. If there's no questions, I'd ask that you affirm the defendant's conviction for aggravated driving under the influence of methamphetamine. Thank you. Mr. Breedlove, so we're both. Thank you, Your Honor. On the last point he made in talking about the brain chemistry changes, he's confusing, which the trial court did and which the prosecutor did, subsection A4 and subsection A6. Subsection A4 requires that the substance cause the person to be incapable of safely driving. Causes them to be incapable of safely driving. So under that statute, yes, the brain chemistry issues, the long changes are irrelevant because it's got to be something that's currently making you incapable of safely driving. But under subsection A6, it's if there's any change, if there's any amount of a drug, substance, or compound. So if there's any compound in your body that is the result of the use of a drug, then it is illegal under subsection A6 to drive in the state of Illinois. That section does not have a requirement that it render you incapable of safely driving. A strict liability to driving, as he pointed out, is the nexus. It's not that it's unsafe. It's that you are simply driving. And so I think that distinction between subsection A4 and subsection A6 is crucial. And I think there's a reason there are two subsections. And the trial court's error in that regard is a crucial area, error, rather, that requires the decision to be reversed. I have to agree with Justice McDade on the amphetamine, methamphetamine issue. There are innumerable words that contain parts of other words that is, or a whole of other words. I am the appellant. I am not an ant. We cannot require or we cannot allow the states to simply say that because one word is within another, that they are the same thing. They could have stipulated. They were stipulating to testimony from experts. They could have made a stipulation that the amphetamines existed as a result of the methamphetamine, but they didn't. Amphetamines are a class of drugs that have many legal uses. ADHD medication, again, I don't recall which justices were on the panel earlier, but in the case involving schizophrenia, many of the drugs for that have amphetamines in them or for other issues, for other mental health issues. So there are legitimate uses of amphetamines and of presumably benzodiazepines, but there's not been much argument there because I don't think the state has argued that that was an optical isomer or any of those sorts of things. Counsel argues that confusion at points during the trial was always rectified. It wasn't. I really don't believe it was. It was continuously repeated. Everybody had to continuously remind everybody else, oh, by the way, this isn't a guilty plea. We're having a trial. Let me read you the rights that we normally read to people when they're pleading guilty, but don't worry, this is a trial. It was not a trial. It simply was not. That issue was never rectified. And while the state suggests that we are cherry picking certain comments out of there, I think reading the stipulated bench trial, which is all of 20 pages plus three pages of stipulated facts, it becomes clear that Mr. Petty did not have a trial. Thank you, Madam Clerk. He has a constitutional right to trial. He demanded one. He did not receive one. Given how far out we are at this point, his right to a speedy trial and the fact that he's been in custody, his right to a speedy trial has expired and the charges should be, this court should reverse and remand with instructions to dismiss for violating the speedy trial rights. Lastly, counsel argues surprise about the difference between A4 and A6. The difference between A4 and A6 is crucial. I believe it was mentioned in the briefs. The different parts of the statutes and further, all courts in the state of Illinois, and I apologize, I don't recall what case it's from, but I believe it's a Supreme Court case that says all courts and all judges in the state of Illinois have an obligation to purge from the records any order that they find to be void. Finding somebody guilty under something they have not been charged with is a void order. And this court has an obligation and all the justices here have an obligation to purge a void order from the record by either declaring the trial and the conviction, overturning it, or remanding with instructions requiring the judges in Stark County to do so. Thank you for your time. If there are no questions, I rest. Nope. Okay. Thank you both for your arguments here this afternoon. This matter will be taken under advisement whether this position will be